**SIGNED this 19th day of November, 2021**

*/s/ Nicholas W. Whittenburg*
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Cynthia Leigh Smith,** | ) | **No. 1:19-bk-10645-NWW** |
| | ) | **Chapter 13** |
| **Debtor.** | ) | |

**M E M O R A N D U M**

Where domestic relations law and bankruptcy law collide, the resulting landscape is fraught with peril. This contested matter is an example of why divorcing spouses and their counsel must have a thorough understanding of the proscriptions of the automatic stay.

Before the court is the debtor's Motion for Contempt and Sanctions against her former spouse, James R. Smith ("Mr. Smith"). The motion asserts that Mr. Smith violated the automatic stay with the postpetition filing of a Petition for Contempt, Breach

of Marital Dissolution Agreement, and Damages against the debtor in the Circuit Court of Hamilton County, Tennessee ("State Court Action"). The debtor seeks to recover damages pursuant to 11 U.S.C. § 362(k)(1). Mr. Smith, of course, opposes the motion.

A final hearing on the motion was held on September 30, 2021. On October 1, 2021, the court entered an order finding that Mr. Smith had willfully violated the automatic stay.[1] The debtor timely filed an Application for Damages seeking to recover attorney's fees and expenses totaling $14,921.09. Mr. Smith timely objected to the application. Neither party requested an evidentiary hearing because there are no material facts in dispute. Having considered the motion, application, and Mr. Smith's opposition thereto, the court grants the debtor's motion in part.

The court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**I. Background**

The debtor and Mr. Smith ended their marriage on January 13, 2016. The marital dissolution agreement ("MDA") divided the couple's real property, awarding the debtor property in Bridgeport, Alabama ("Alabama Property"), and awarding Mr. Smith property in Chattanooga, Tennessee ("Chattanooga Property"). The MDA required the debtor to quitclaim her interest in the Chattanooga Property to Mr. Smith and to refinance the mortgage encumbering the Alabama Property to remove Mr. Smith from the secured

---

[1] This memorandum opinion shall supplement the court's prior oral ruling as reflected in the October 1, 2021 order.

indebtedness.[2] The debtor did not comply.

In December 2018, Mr. Smith filed a petition for contempt against the debtor in the Circuit Court of Hamilton County, Tennessee, seeking to compel the debtor to comply with the MDA. On February 4, 2019, the state court orally ordered the debtor to quitclaim her interest in the Chattanooga Property to Mr. Smith and afforded her an additional ninety days to refinance the Alabama Property.

No order was entered reflecting the state court's ruling until July 25, 2019. Nonetheless, on February 4, 2019, Mrs. Smith executed a quitclaim deed transferring her interest in the Chattanooga Property to Mr. Smith. The debtor has yet to refinance the indebtedness secured by the Alabama Property.

One week after the state court hearing, on February 14, 2019, the debtor initiated this pending chapter 13 case. Mr. Smith was mailed notice of the commencement of the bankruptcy case. The deadline to file non-governmental proofs of claim was April 25, 2019. Mr. Smith did not file a proof of claim.

The debtor's chapter 13 plan was confirmed on April 19, 2019, without objection from Mr. Smith. Pursuant to the confirmed plan, creditors holding nonpriority, unsecured claims, such as Mr. Smith, are to be paid in full. However, because Mr. Smith failed to file a timely proof of claim, he has no allowed claim and receives no distribution under the confirmed plan.

---

[2] The MDA includes no provision for Mr. Smith to receive alimony, maintenance, or support from the debtor. In fact, the MDA provides that the debtor and Mr. Smith expressly waive any claim to spousal maintenance. The court finds, and Mr. Smith did not proffer evidence to the contrary, that the property division and the related allocation of debts provided in the MDA are not in the nature of alimony, support, or maintenance.  Consequently, any claim held by Mr. Smith is not a "domestic support obligation." 11 U.S.C. § 101(14A).

The confirmed plan makes no provision for the refinancing of any indebtedness secured by the Alabama Property. Instead, if completed, the plan will bring current both the first and second mortgages over the term of the plan.

Meanwhile, Mr. Smith sought to sell the Chattanooga Property and to purchase a new residence. By early March 2019, both the Chattanooga Property and a new residence were under contracts to sell and to purchase, respectively. Presumably, the debtor's bankruptcy case and the debtor's failure to refinance the indebtedness secured by the Alabama Property hampered the dual closings.[3] This is the point at which insult becomes injury.

On July 10, 2019, Mr. Smith, with knowledge of the debtor's pending bankruptcy case, commenced the State Court Action against the debtor, seeking entry of a judgment in a later-amended amount of $23,179.13 in damages. The filing contended that his damages were attributable to the debtor's failure to comply with the prepetition MDA, and Mr. Smith sought a nondischargeable judgment.[4]

The State Court Action proceeded in fits and starts throughout 2020 and during the first quarter of 2021. During that time, the debtor was represented by two attorneys, one representing her in connection with the State Court Action and the other representing her in connection with her bankruptcy case. Nonetheless, the debtor failed to assert

---

[3] It is unclear exactly why the debtor's bankruptcy case disrupted the closing of the sale of the Chattanooga Property or Mr. Smith's purchase of a new residence. However, by order dated May 31, 2019, the court authorized a sale of the Chattanooga Property with Mr. Smith to receive the net proceeds of the sale. As for the purchase of the new residence, perhaps the debtor's failure to refinance the Alabama Property and/or Mr. Smith's inability to timely close the sale of the Chattanooga Property rendered Mr. Smith unable to qualify for a loan needed to purchase the new residence.

[4] Mr. Smith also asserts that he has been damaged by the debtor's failure to comply with the MDA in the amount of $3,319.00. That additional sum relates to his purported tax liability attributable to forgiveness of the indebtedness secured by the Alabama Property.

that the filing of the State Court Action violated the automatic stay.

On June 3, 2021, the court approved the debtor's application to hire Johnson & Mulroony, PC, to replace her counsel in the State Court Action. During a pretrial conference held in state court on May 14, 2021, the debtor's new counsel for the first time contended that the State Court Action violated the automatic stay. The action was placed in a holding pattern as the attorneys jousted over whether it should be dismissed or merely rendered dormant. The debtor maintained that the case should be dismissed, perhaps with prejudice, because it was filed after the bankruptcy petition date in violation of the automatic stay. By contrast, Mr. Smith maintained that the State Court Action should be stayed until the completion of the bankruptcy case because the damages at issue were excepted from discharge pursuant to 11 U.S.C. § 523(a)(5) or (15).

On June 22, 2021, the debtor filed the pending motion for contempt against Mr. Smith seeking actual damages, including attorney's fees, emotional distress damages, and punitive damages pursuant to 11 U.S.C. § 362(k). Mr. Smith opposed the motion contending that: (a) the debtor waived the automatic stay by failing to assert it earlier; and (b) the claim was nondischargeable because Mr. Smith's claim for damages flowed from the debtor's breach of the MDA.

On August 19, 2021, Mr. Smith finally voluntarily dismissed the State Court Action—approximately two and a half years into the debtor's bankruptcy case, over three months after the debtor raised the automatic stay in state court, and almost two months after the pending motion was filed and a subsequent hearing was held. After multiple hearings, the court held orally that Mr. Smith willfully violated the automatic stay

and entered an order to that effect, reserving any issue of damages caused by the violation for further consideration.

The debtor's application for damages seeks to recover the attorney's fees and expenses of Johnson & Mulroony, P.C., totaling $14,921.09. Markedly, the application includes no claim for emotional distress damages or legal fees that may have been incurred by the debtor's initial counsel retained to defend the State Court Action.[5]

## II. Legal Analysis

### A. The Intersection of the Automatic Stay and Domestic Relations Law.

The filing of a petition for relief under the Bankruptcy Code "operates as a stay, applicable to all entities." 11 U.S.C. § 362(a). Thus, when a debtor files for bankruptcy, the stay is triggered automatically.[6]

The breadth of the automatic stay is considerable. Relevant to this case, the automatic stay prohibits the "commencement or continuation" of an action or proceeding against the debtor to collect a prepetition debt. *Id.* § 362(a)(1). Furthermore, the automatic stay prohibits: (a) the "enforcement" against the debtor of any judgment obtained before the filing of a bankruptcy petition; and (b) any act to "collect, assess, or recover" a prepetition claim against the debtor. *Id.* § 362(a)(2), (6).

---

[5] Although requested in the motion, the application does not include a claim for punitive damages. Based on that absence and statements made by the debtor's counsel at the September 30, 2021 hearing, the court finds that the debtor has abandoned any claim to punitive damages. Further, because of the debtor's delay in raising the automatic stay as a defense following the filing of the State Court Action, the court finds that the debtor has not proven that Mr. Smith recklessly or deliberately violated the automatic stay or engaged in other egregious conduct, and therefore, an award of punitive damages is unwarranted.

[6] Although not applicable in this case, the Bankruptcy Code provides that the automatic stay does not immediately arise when a debtor files a bankruptcy petition if two or more bankruptcy cases of the debtor were pending within the year preceding the filing of the current case. 11 U.S.C. § 362(c)(4)(A)(i).

Courts have long recognized that the automatic stay is a fundamental debtor protection. *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dept. of Env't Prot.*, 474 U.S. 494, 503 (1986). The automatic stay affords the debtor a "breathing spell" from all collection efforts, relieving her of financial pressures while proposing a repayment plan. *Fed. Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1436 (6th Cir. 1985); *see also In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 100 (3d Cir. 2008). The automatic stay also serves the interests of the debtor's creditors by facilitating an orderly administration of the bankruptcy estate and prohibiting any individual creditor from single-handedly carving up the debtor's assets. *See City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021); *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 382–83 (6th Cir. 2001); *Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009); *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986). Serving the interests of both debtors and creditors, the Supreme Court recognized expressly that the automatic stay preserves the status quo existing at the time the bankruptcy petition is filed. *Fulton*, 141 S. Ct. at 590 (quoting *Nken v. Holder*, 556 U.S. 418, 429 (2009)) ("[T]he term 'stay' is commonly used to describe an order that 'suspend[s] judicial alteration of the status quo.'")). Accordingly, the automatic stay is akin to the sanctuary afforded by the medieval church of Europe. Once a person crossed the threshold of the church, all those in pursuit were made to halt.

Congress included multiple exceptions to the automatic stay. *See* 11 U.S.C. § 362(b). For example, postpetition attempts to establish or modify domestic support obligations, or to collect domestic support obligations from non-estate property or the debtor's income, do not violate the automatic stay. *Id.* § 362(b)(2). Thus, before the

court turns to whether the debtor may recover actual damages for a stay violation under Section 362(k), two determinations are required: (a) whether the filing and prosecution of the State Court Action violated the automatic stay; and (b) if so, whether an exception applies. *Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554, 567 (B.A.P. 6th Cir. 2019).

**B. Commencement and Continuation of the State Court Action Violated the Automatic Stay.**

The Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Any damages attributable to the debtor's breach of the prebankruptcy MDA are a prepetition "claim" even though some or all the damages remained unmatured, unfixed, or unliquidated when the debtor's bankruptcy case was filed. *See generally Wohleber*, 596 B.R. at 567 (citations omitted) (stating property divisions awarded in domestic relations cases prior to the filing of a bankruptcy petition are a prepetition "debt of the debtor"). Therefore, the filing of the State Court Action seeking to recover damages traceable to the debtor's breach of the MDA was the "commencement" of a proceeding and an "act" to collect a prepetition "claim" in violation of Section 362(a)(1) and (6). Mr. Smith's filing of the State Court Action disturbed the status quo existing at the time the debtor's bankruptcy petition was filed.

Further, Mr. Smith's insistence that the State Court Action be placed on hold rather than dismissed amounted to a "continuation" of the action contrary to Section 362(a)(1). Had the State Court Action existed when the debtor filed her bankruptcy case, a holding pattern would not have violated the automatic stay because that hold

merely maintained the status quo existing on the bankruptcy petition date. *See, e.g., Guido v. Strategic Funding Source, Inc. (In re Guido)*, No. 21-90004-LT, 2021 WL 2226613 (Bankr. S.D. Cal. June 1, 2021); *Margavitch v. Southlake Holdings, LLC (In re Margavitch)*, No. 5:20-00014-MJC, 2021 WL 4597760 (Bankr. M.D. Pa. Oct. 6, 2021). Because the State Court Action was filed postpetition, it was in violation of Section 362(a)(1). By proposing to freeze the action in state court until completion of the bankruptcy case, Mr. Smith was proposing to continue or maintain a stay violation. *See Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002). Only dismissal of the State Court Action restored the debtor to the status quo that existed on the bankruptcy petition date.

Mr. Smith has not identified an exception to the automatic stay specified in 11 U.S.C. § 362(b) or any otherwise applicable exception to support his position. Instead, Mr. Smith maintains that because his claim is nondischargeable under 11 U.S.C. § 523 (a)(5) or (15), the filing of the State Court Action and his refusal to promptly dismiss it did not violate the automatic stay. That argument is misplaced for two reasons.

First, whether the State Court Action violates any discharge injunction is irrelevant and presumptive. The debtor has not yet received a discharge. A chapter 13 debtor generally does not receive a discharge until the debtor completes payments under a confirmed plan. 11 U.S.C. § 1328(a).[7] Mr. Smith conflates discharge injunction violations and automatic stay violations. The automatic stay arises at the beginning of the case, having a different scope and a different purpose than the discharge injunction.

---

[7] In limited circumstances, a chapter 13 debtor may qualify for a discharge without completing payments under a confirmed plan. *See* 11 U.S.C. § 1328(b) and §1328(i).

*Compare* 11 U.S.C. § 362, *with* 11 U.S.C. § 524. "A stay aims to prevent damaging disruptions to the administration of a bankruptcy case in the short run, whereas a discharge is entered at the end of the case and seeks to bind creditors over a much longer period." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019). In light of those varying functions and because the debtor has not received a discharge, whether Mr. Smith's claim is dischargeable is of no consequence when the automatic stay is implicated.

Furthermore, Mr. Smith is incorrect about the dischargeability of his claim. The claim is not a "domestic support obligation" as that term is defined in the Bankruptcy Code. 11 U.S.C. § 101(14A). If the debtor's case is dismissed or converted to one under chapter 7, Mr. Smith's claim would not be subject to discharge. *Id.* §§ 523(a)(15), 727(b). Assuming the debtor completes payments under her confirmed chapter 13 plan, however, Mr. Smith's nondomestic-support-obligation claim will be discharged. *Id.* § 1328(a).

Second, Mr. Smith argues that the debtor waived the automatic stay by failing to timely file a motion to dismiss or otherwise promptly raise the automatic stay defensively in the State Court Action. That argument is also doubly flawed.

Primarily, waivers of the automatic stay by a debtor are not favored for public policy reasons. *Farm Credit of Cent. Florida, ACA v. Polk*, 160 B.R. 870, 873 (M.D. Fla. 1993); *In re Pease*, 195 B.R. 431 (Bankr. D. Neb. 1996). Congress intended the automatic stay not only to afford the debtor a breathing spell but also to facilitate the debtor's efforts to reorganize for the benefit of all creditors. *See generally Polk*, 160 B.R. at 873. This case perfectly exemplifies why waivers of the automatic stay are

disfavored.

The debtor's creditors filed proofs of claim totaling more than $337,000.00, including nonpriority unsecured claims of almost $60,000.00. If the debtor successfully completes her confirmed plan, the nonpriority unsecured claims will be paid in full. Likewise, the remainder of her debts, including the claims secured by the Alabama Property, should be current.

If the court were to find that the debtor waived the automatic stay, Mr. Smith would be free to pursue the State Court Action and enforce his claim. Consequently, any resulting judgment would expose the debtor not only to monetary sanctions but also could result in a forced disposition of the Alabama Property, which is property of the bankruptcy estate. 11 U.S.C. § 541(a). Hence, allowing the State Court Action to proceed would jeopardize the debtor's ability to complete her chapter 13 plan, to the detriment of creditors with timely filed claims.

Next, Mr. Smith's reliance on waiver ignores that the automatic stay is *automatic* and requires no affirmative action by either the bankruptcy court or the debtor to prompt its proscriptions. Conduct in violation of the automatic stay (absent retroactive annulment by the bankruptcy court pursuant to 11 U.S.C. § 362(d)) is considered "invalid and voidable" and of no effect. *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 910–911 (6th Cir. 1993). Once a debtor makes a creditor aware of the bankruptcy case, the creditor must comply with the automatic stay. *See In re Dunning*, 269 B.R. 357, 368 (Bankr. N.D. Ohio 2001). The automatic stay is not an affirmative defense that is waived if not raised promptly; the sanctuary-seeking debtor is not required to build the walls of the church, but only to retreat behind them.

As pointed out by Mr. Smith, some courts have found a waiver of the automatic stay or a basis for annulment under 11 U.S.C. § 362(d). *See, e.g.*, *In re Hoskins*, 266 B.R. 872 (Bankr. W.D. Mo. 2001). Those cases involved rare circumstances where debtors wielded the automatic stay as a sword rather than a shield. *See id.*; *see also, e.g., In re Cobb*, 88 B.R. 119 (W.D. Tex. 1988). In those cases, debtors used the automatic stay as never intended by Congress–hence, those cases do not provide Mr. Smith with a method of besieging a properly functioning automatic stay. Even assuming the automatic stay is subject to waiver, no waiver occurred in this case. Prior to dismissal of the State Court Action, the state court made no ruling adverse to the debtor. Any disputes between the parties remained unresolved. The debtor is not belatedly resorting to the automatic stay to avoid the negative consequences of her delay. Instead, the debtor is simply enforcing the automatic stay, functioning in this case to afford the debtor a breathing spell as Congress intended.

**C. Mr. Smith Willfully Violated the Automatic Stay.**

Having found an automatic stay violation and no applicable exception, the court now turns to whether the debtor is entitled to recover damages. The remedy afforded an individual debtor for violation of the automatic stay is the private cause of action granted in Section 362(k) of the Bankruptcy Code. Subject to one exception not applicable in this case, "an individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). An individual debtor seeking damages under Section 362(k) bears the burden of proving by a preponderance of the evidence that (1) a violation occurred; (2) the violation was

committed willfully; and (3) the debtor was injured by the violation. *See In re Mocella*, 552 B.R. 706, 714 (Bankr. N.D. Ohio 2016) (citing *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010)).

"The willfulness requirement refers to the deliberateness of the conduct and the knowledge of the bankruptcy filing, not to a specific intent to violate a court order." *In re Skeen*, 248 B.R. 312, 317 (Bankr. E.D. Tenn. 2000) (quoting *In re Timbs*, 178 B.R. 989, 997 (Bankr. E.D. Tenn. 1994)).[8] When a creditor has actual notice of the bankruptcy case, any intentional act or omission that violates the automatic stay is willful. *In re Mocella*, 552 B.R. at 715 (citing *Tyson v. Hunt (In re Tyson)*, 450 B.R. 754, 766 (Bankr. W.D. Tenn. 2011)). A party's subjective, good faith belief that he had a right to engage in the violating conduct is irrelevant. *In re Webb*, 472 B.R. 665 (B.A.P. 6th Cir. 2012) (unpublished table decision) (citing *TranSouth Fin'l Corp. v. Sharon (In re Sharon)*, 234 B.R. 676 (B.A.P. 6th Cir. 1999)); *see also Johnson v. Smith (In re Johnson)*, 501 F.3d 1163 (10th Cir. 2007); *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989) (quoting *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89, 165 (Bankr. D.D.C. 1988) ("Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded.").

---

[8] Although not raised by Mr. Smith, the meaning of the term "willful" in Section 362(k) may be called into question after *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). In that case, the Supreme Court held that civil contempt for a violation of a bankruptcy court's discharge order is inappropriate if there is a "fair ground of doubt" whether the creditor's conduct violates the discharge. *Id.* at 1802. However, *Taggart* involved the bankruptcy court's exercise of its equitable power under 11 U.S.C. § 105(a) and not the application of the statutory remedy prescribed by 11 U.S.C. § 362(k). Further, as discussed herein, the purpose served by the automatic stay differs from the purpose of the discharge injunction. In any event the court need not resolve that question because Mr. Smith has made no argument that would lead the court to find that there was any fair ground of doubt as to whether Mr. Smith's conduct violated the automatic stay.

The debtor has satisfied her burden of proof respecting the first two elements necessary to recover under Section 362(k). As found above, the postpetition filing of the State Court Action and the failure to promptly dismiss such action violated the automatic stay. It is undisputed that Mr. Smith was aware of the pendency of the debtor's bankruptcy case when he commenced the State Court Action. Consequently, the court finds that he willfully violated the automatic stay. The only question remaining is whether the debtor met her burden of establishing that she suffered damages compensable under Section 362(k).[9]

**D. The Debtor Is Entitled to Recover Reasonable Attorneys' Fees and Expenses.**

"Once a 'willful' violation of the stay is established, an award of damages is mandatory under § 362(k)(1) so long as there is a resulting injury." *Harris v. Mem'l Hosp.* (*In re Harris*), 374 B.R. 611, 616 (Bankr. N.D. Ohio 2007) (citing *Spears v. Ford Motor Credit Co.* (*In re Spears*), 223 B.R. 159, 165 (Bankr. N.D. Ill. 1998)). Section 362(k)(1) requires that attorney fees be awarded against a creditor who has willfully violated the stay; ". . . no other injury is required; in appropriate circumstances, an award [of] attorney fees under § 362(k) may stand on its own." *Id*. (noting the fees must be reasonable and should bear "a reasonable relationship to the amount in controversy"). Such award may include attorney's fees incurred by successfully

---

[9] In his pleadings filed with this court and during oral argument, Mr. Smith requested that the court exercise its equitable powers to relieve him of the consequences of his violation. However, "'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of'" the Bankruptcy Code. *Law v. Siegel*, 571 U.S. 415, 421 (2014) (citations omitted); *see also Smith v. U.S. Bank Nat'l Ass'n (In re Smith)*, 999 F.3d 452 (6th Cir. 2021). By using the word "shall" in Section 362(k), Congress intended the award of actual damages caused by a willful stay violation to be obligatory. *See, e.g.*, *Vázquez Laboy v. Doral Mortg. Corp. (In re Vázquez Laboy)*, 647 F.3d 367 (1st Cir. 2011); *Clayton v. Old Kent Mortg. Co. (In re Clayton)*, No. 09-03024, 2010 WL 4482810 (Bankr. S.D. Tex. Oct. 29, 2010). Accordingly, the court has no discretion to ignore that mandate.

prosecuting a claim to recover damages after the violation has ceased. *See, e.g.*, *Easley v. Collection Serv. of Nevada*, 910 F.3d 1286 (9th Cir. 2018); *Mantiply v. Horne (In re Horne)*, 876 F.3d 1076 (11th Cir. 2017). Of course, courts appropriately consider a debtor's efforts to mitigate her damages in awarding fees. *See, e.g.*, *Mitchell v. Anderson* (*In re Mitchell*), 545 B.R. 209 (Bankr. N.D. Ohio 2016).

In her application, the debtor seeks to recover legal fees and expenses incurred to compel Mr. Smith to cease his willful violation and in prosecuting the debtor's motion. The application totals $14,921.09, including an itemization of the fees and expenses she incurred. In opposition to any award, Mr. Smith makes two arguments.

First, Mr. Smith argues that the fees sought by the debtor could have been avoided. Specifically, Mr. Smith complains that Johnson & Mulroony's retention would have been unnecessary had the debtor simply raised the automatic stay earlier during the State Court Action. As discussed previously, that argument ignores that the automatic stay is *automatic*, and once apprised of the bankruptcy filing, it is Mr. Smith's burden to comply with its proscriptions. Additionally, Mr. Smith's argument suggests that had the debtor raised the automatic stay sooner, he would have voluntarily dismissed the State Court Action. Considering Mr. Smith's zealous and protracted opposition to the debtor's pending motion and his refusal to promptly dismiss the State Court Action after the debtor asserted the automatic stay, the court questions the foundation of his position.

Second, Mr. Smith argues that, considering Johnson & Mulroony's expertise and the complexity of the issues involved, the fees and expenses are excessive. This court regularly reviews fee applications filed by debtor's counsel seeking to recover fees

pursuant to 11 U.S.C. §§ 330 and 331. The court closely scrutinized the itemized statement accompanying the debtor's application. Based on the court's review of the itemized statement and considering Mr. Smith's zealous opposition to the motion, the court certainly does not find the fees at issue to be excessive.

Much of the legal fees requested relate to legal research, drafting pleadings, communications with the debtor and opposing counsel, and preparing for and attending hearings before this court and the state court. Those legal fees were caused by Mr. Smith's refusal to dismiss the State Court Action. After the debtor requested that he dismiss the action, Mr. Smith insisted that the action should not be dismissed and should be rendered dormant until the debtor's bankruptcy case was concluded.[10] For more than three months after the automatic stay was at issue, Mr. Smith steadfastly refused to restore the status quo that existed when the debtor filed her bankruptcy petition. Accordingly, with respect to the fees incurred to coerce Mr. Smith's compliance with the automatic stay and to prosecute the present motion, the court finds that the debtor has satisfied her burden of proof under Section 362(k).

Notwithstanding Mr. Smith's assertion to the contrary, the debtor was not mining for legal fees. In fact, she has limited her claim for actual damages to the fees and expenses of Johnson & Mulroony. She is not seeking to recover any legal fees she incurred defending the State Court Action prior to her raising the automatic stay.

However, not all of the legal fees incurred by the debtor are recoverable under

---

[10] Mr. Smith asserts that the debtor demanded that the State Court Action be dismissed with prejudice rather than dismissed without prejudice. Assuming that is true, it does not assist him in the defense of the debtor's Section 362(k) claim. The record is clear that Mr. Smith was unwilling to dismiss the State Court Action until August 19, 2021, either with or without prejudice. Instead, he was only willing to freeze the proceeding until the bankruptcy case was concluded.

Section 362(k). Analyzing the itemized statement accompanying the application, the court notes that two attorneys at the Johnson & Mulroony firm shared responsibility for representing the debtor, Douglas R. Johnson and Kellyann Mulroony. Having two attorneys representing a single client presents a risk of dual representation, but in this instance the court is undisturbed because judicial proceedings were pending before two courts. Nonetheless, the statement includes a $93.00 charge by Mr. Johnson relating to a meeting with a third member of the firm, Elisabeth Donnovin. The court is not persuaded that that charge was necessary or reasonable.

The statement also includes an entry on September 8, 2021, for an additional $93.00 relating to "[f]ollow up on status Alabama deed information needed from Mr. Smith and prepare for tomorrow's hearing." The time relating to that entry totals eighteen minutes. The court is unable to determine whether that entry relates solely to the debtor's enforcement of the automatic stay and prosecution of her motion. Accordingly, the court finds that the debtor has not sufficiently proven that the fees reflected in that entry are recoverable under Section 362(k).

Additionally, the statement includes fees totaling $1,213.00, related, at least in part, to defense of a motion for relief from the automatic stay that Mr. Smith filed in this court on August 11, 2021. That motion was subsequently withdrawn.[11] The fees incurred defending that motion are not damages caused by Mr. Smith's violation of the automatic stay. The Bankruptcy Code allows a creditor to file a motion seeking relief

---

[11] The debtor has not alleged that Mr. Smith's motion for relief from the automatic stay was frivolous or filed for an improper purpose in violation of Fed. R. Bankr. P. 9011(b). Therefore, the debtor may not recover attorneys' fees incurred defending the motion as a sanction pursuant to Fed. R. Bankr. P. 9011(c).

from the automatic stay. 11 U.S.C. § 362(d). The Code does not provide, however, for the debtor's recovery of attorney's fees incurred defending such motion.

Finally, the reasonableness and necessity of the "disbursements" reflected in the itemized statement for photocopying expenses totaling $47.00 are not satisfactorily proven by the debtor. Whether such charges are the law firm's internal copying costs or sums paid to a vender providing copying services is unclear. Further, the statement fails to include any detail as to the nature or number of documents copied. Accordingly, the aforementioned fees shall be deducted from the amount sought in the debtor's application.

### III. Conclusion

For the foregoing reasons, by separate order entered contemporaneously with this memorandum opinion the court grants in part the debtor's motion and awards the debtor attorney's fees and expenses against Mr. Smith pursuant to 11 U.S.C. § 362(k) in the total amount of $13,475.09.

# # #